UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAX GLICKMAN, Individually and on
Behalf of All Others Similarly Situated,

                     Plaintiff

v.

NSTAR, NORTHEAST UTILITIES, NU
HOLDING ENERGY 1 LLC, NU HOLDING
ENERGY 2 LLC, THOMAS J. MAY, GARY
L. COUNTRYMAN, THOMAS G. DIGNAN,
JR., JAMES S. DISTASIO, CHARLES K.
GIFFORD, MATINA S. HORNER, PAUL A.
LA CAMERA, WILLIAM C. VAN FAASEN
and GERALD L. WILSON,

                Defendants.

Civil Action No:

**CLASS ACTION COMPLAINT**

Plaintiff Max Glickman ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated, files this Class Action Complaint (the "Complaint") against the Defendants herein named, and alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this shareholder class action on behalf of himself and the other public shareholders of NSTAR (the "Company") against the Company's Board of Trustees (the "Board" or the "Individual Defendants") in connection with the proposed sale of NSTAR to defendant Northeast Utilities, NU Holding Energy 1 LLC, a Massachusetts limited liability company and wholly-owned subsidiary of Northeast Utilities, and NU Holding Energy 2 LLC, a Massachusetts limited liability company and wholly-owned subsidiary of Northeast Utilities, in a stock-for-stock transaction valued at approximately $17.5 billion (the "Proposed Transaction"). Pursuant to the terms of the Proposed Transaction, NSTAR shareholders would receive 1.312 Northeast Utilities common shares for each NSTAR share that they own.

2.     In connection with the Proposed Transaction, however, the Board failed to adequately discharge its fiduciary duties to the shareholders by, *inter alia*: (i) failing to ensure that they will receive maximum value for their shares; (ii) failing to conduct an appropriate sale process; and (iii) agreeing to onerous terms in the Merger Agreement (defined below) with Northeast Utilities that will dissuade or otherwise preclude the emergence of a superior transaction.

3.     Accordingly, this action seeks equitable relief compelling the Board to properly exercise its fiduciary duties to maximize shareholder value in connection with the Proposed Transaction or any alternate transaction.

## THE PARTIES

4.    Plaintiff is, and at all times relevant hereto was, the owner of NSTAR common stock.  He is a resident of 60 Harrigan Road, Hopewell Junction, New York 12533.

5.    Defendant NSTAR, a Massachusetts holding company whose headquarters are located at 800 Boylston Street, Boston, Massachusetts 02199.  Through its subsidiaries, NSTAR engages in the distribution, transmission, and sale of energy in Massachusetts.  The Company supplies electricity at retail to the City of Boston and 80 surrounding cities and towns.  It also distributes natural gas in central and eastern Massachusetts and is involved in the telecommunications business comprising the installation, ownership, operation, and maintenance of a wholesale transport network for other telecommunications service providers in the metropolitan Boston area to deliver voice, video, data, and Internet services to customers, as well as in the liquefied natural gas service business.  As of December 31, 2009, the Company served approximately 1.4 million customers, including approximately 1.1 million electric distribution customers in 81 communities and approximately 300,000 natural gas distribution customers in 51 communities.  NSTAR common stock publicly trades on the New York Stock Exchange ("NYSE") under the symbol "NST" and, as of July 30, 2010, it had 103,586,727 shares of common stock outstanding.

6.    Defendant Thomas J. May ("May") has served as Chief Executive Officer ("CEO") and a Trustee of NSTAR since 1999, and Chairman of the Board and President since 2002.  Defendant May serves as Chairman of NSTAR's Executive Committee and represents management on the Board as the sole management, non-independent Trustee.  In addition, Defendant May serves as a director of Bank of America and Liberty Mutual Holding Company, Inc.  He resides at 22 Longmeadow Drive, Westwood, Massachusetts 02090.

- 2 -

7.     Defendant Gary L. Countryman ("Countryman") has served as a Trustee of NSTAR since 1999.   Defendant Countryman serves as Chairman of NSTAR's Personnel Committee and is a member of its Executive Committee.   Defendant Countryman formerly served as CEO of Liberty Mutual Insurance Company, where he is currently a director and holds the position of Chairman Emeritus.   In addition, Defendant Countryman currently serves as a director of CBS Corporation.   He resides at 111 Hager Street, Marlborough, Massachusetts 01752.

8.     Defendant Thomas G. Dignan, Jr. ("Dignan") has served as a Trustee of NSTAR since 1999.   Defendant Dignan serves as Chairman of NSTAR's Board Governance and Nominating Committees and is a member of its Executive Committee and Executive Personnel Committee.   Defendant Dignan was formerly a partner at the law firm of Ropes & Gray, LLP, where he represented companies in many regulated industries, including utilities, until he retired in 2000.   He resides at 9053 Windswept Drive, Bonita Springs, Florida 34135.

9.     Defendant James S. DiStasio ("DiStasio") has served as a Trustee of NSTAR since 2009.   Defendant DiStasio is designated as NSTAR's Financial Expert and is a member of its Audit, Finance and Risk Management Committee and Executive Personnel Committee.   Defendant DiStasio formerly served as Senior Vice Chairman and Chief Operating Officer of Ernst & Young, a registered public accounting firm, from 2003 until his retirement in 2007.   In addition, Defendant DiStasio currently serves as a director of EMC Corporation.   He resides at 56 Spinnaker Lane, Harwich Port, Massachusetts 02646.

10.     Defendant Charles K. Gifford ("Gifford") has served as a Trustee of NSTAR since 1999.   Defendant Gifford serves as NSTAR's Presiding Trustee and is a member of its Board Governance and Nominating Committees, Executive Committee and Executive Personnel

- 3 -

Committee.  Defendant Gifford currently serves as Chairman Emeritus and a director of Bank of America, where he retired as Chairman in 2005.  In addition, Defendant Gifford currently serves as a director of CBS Corporation.  He resides at 107 Summer Street, Manchester, Massachusetts 01944.

11.     Defendant Matina S. Horner ("Horner") has served as a Trustee of NSTAR since 1999.  Defendant Horner serves as Chairman of NSTAR's Audit, Finance and Risk Management Committees and is a member of its Executive Committee.  Defendant Horner formerly served as Executive Vice President of Teachers Insurance and Annuity Association/College Retirement Equities Fund from 1989 until her retirement in 2003.  In addition, Defendant Horner currently serves as a trustee of BlackRock Funds.  She resides at 75 Cambridge Parkway, 406W, Cambridge, Massachusetts 02142.

12.     Defendant Paul A. La Camera ("La Camera") has served as a Trustee of NSTAR since 1999.  Defendant La Camera is a member of NSTAR's Audit, Finance and Risk Management Committees and Board Governance and Nominating Committees.  Defendant La Camera has served as General Manager of WBUR Boston, a broadcasting company, since 2005 and formerly served as President and General Manager of WCVB-TV Channel 5 Boston.  He resides at 214 Beacon Street, Apartment 2, Boston, Massachusetts 02116.

13.     Defendant William C. Van Faasen ("Van Faasen") has served as a Trustee of NSTAR since 2002.  Defendant Van Faasen is a member of NSTAR's Audit, Finance and Risk Management Committees and Executive Personnel Committees.  Defendant Van Faasen formerly served as Chairman of Blue Cross Blue Shield of Massachusetts Inc. until his retirement in 2007.  In addition, Defendant Van Faasen currently serves as a director of IMS

Health, Inc. and Liberty Mutual Holding Company, Inc.   He resides at 12 Proctor Street, Manchester, Massachusetts 01944.

14.     Defendant Gerald L. Wilson ("Wilson") has served as a Trustee of NSTAR since 1999.   Defendant Wilson is a member of NSTAR's Audit, Finance and Risk Management Committees and Board Governance and Nominating Committees.   Defendant Wilson has served as Professor Emeritus at the Massachusetts Institute of Technology since 2009, where he formerly served as the Vannevar Bush Professor of Engineering from 1983 until his retirement in 2009.   He resides at 39 Babe Ruth Drive, Sudbury, Massachusetts 01776.

15.     The Individual Defendants, as officers and/or directors of NSTAR, have a fiduciary responsibility to Plaintiff and the other public shareholders of NSTAR, and owe them the highest obligations of good faith, loyalty, fair dealing, due care and candor.

16.     Defendant Northeast Utilities is a Massachusetts public utility holding company whose headquarters are located at 56 Prospect Street, Hartford, Connecticut.   Northeast Utilities is engaged in the energy delivery business for residential, commercial, and industrial customers in Connecticut, New Hampshire, and western Massachusetts.   It operates in three segments, Electric Distribution, Natural Gas Distribution, and Electric Transmission:   (a) the Electric Distribution segment engages in the purchase, delivery, and sale of electricity; (b) the Natural Gas Distribution segment operates a natural gas distribution system in Connecticut and provides gas supply to residential customers for heating, hot water, and cooking needs, as well as supplying commercial and industrial customers.   It also offers gas transportation services to commercial and industrial customers; and (c) the Electric Transmission segment provides transmission services.   Northeast Utilities common stock publicly trades on the NYSE under the symbol "NU" and, as of July 30, 2010, it had 176,150,636 shares of common stock outstanding.

17.     Defendant NU Holding Energy 1 LLC is a direct wholly-owned subsidiary of Northeast Utilities formed solely to effectuate the Proposed Transaction.  NU Holding Energy 1 LLC's headquarters are located at c/o Northeast Utilities, 56 Prospect Street, Hartford, Connecticut.  Where appropriate from the context of the allegations, NU Holding Energy 1 LLC is referred to herein collectively with Northeast Utilities as "Northeast Utilities."

18.     Defendant NU Holding Energy 2 LLC is a direct wholly-owned subsidiary of Northeast Utilities formed solely to effectuate the Proposed Transaction.  NU Holding Energy 2 LLC's headquarters are located at c/o Northeast Utilities, 56 Prospect Street, Hartford, Connecticut.  Where appropriate from the context of the allegations, NU Holding Energy 2 LLC is referred to herein collectively with Northeast Utilities as "Northeast Utilities."

19.     The Individual Defendants, together with Defendants NSTAR and Northeast Utilities, are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

20.     This Court has jurisdiction under 28 U.S.C. §1332(a)(2), because Plaintiff and Defendants are citizens of different states, as alleged herein, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

21.     Venue properly lies in this District pursuant to 28 U.S.C. §1391(a) because many of Defendants reside herein, Defendants conduct substantial business in Massachusetts, and material aspects of the conduct at issue took place and had an effect here.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of NSTAR stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust,

corporation, or other entity related to or affiliated with any Defendants.  This action is properly maintainable as a class action under Fed. R. Civ. P. 23.

23.     The Class is so numerous that joinder of all members is impracticable. According to NSTAR's quarterly report for the  period ended June 30, 2010, filed on August 3, 2010 with the U.S. Securities and Exchange Commission, as of June 30, 2010, there were 103,586,727 shares of the Company's common stock outstanding.  These shares are held by hundreds, if not thousands, of beneficial holders.

24.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b)     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(c)     whether the Individual Defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

(d)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(e)     whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

(f)     whether Northeast Utilities is aiding and abetting the wrongful acts of the Individual Defendants.

25.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

26.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

28.     Plaintiff anticipates that there will be no difficulty in the management of this litigation as a class action.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

29.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

30.     In any situation where the directors or trustees of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors or trustees have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a

significant premium. To diligently comply with these duties, the directors/trustees and/or officers may not take any action that, among other things:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors/trustees and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

31.     In accordance with their duties of loyalty and good faith, Defendants, as directors/trustees and/or officers of NSTAR, are obligated under applicable law to refrain from:

(a)     participating in any transaction where the loyalties of the directors/trustees or officers are divided;

(b)     participating in any transaction where the directors/trustees or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

32.     Defendants are also obliged to honor their duty of candor to NSTAR's shareholders by, *inter alia*, providing all material information to the shareholders regarding a scenario in which they are asked to vote or tender their shares. This duty of candor ensures that

shareholders have all information that will enable them to make informed, rational and intelligent decisions about whether to vote or tender their shares.

33.     Plaintiff alleges herein that Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, and independence owed to Plaintiff and other public shareholders of NSTAR.  Defendants stand on both sides of the transaction, are engaging in self dealing, and are obtaining for themselves personal benefits, including personal financial benefits not shared equally by Plaintiff or the Class.  As a result of Defendants' self dealing and divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their NSTAR common stock in the Proposed Transaction.

34.     Because Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, candor and independence in connection with the Proposed Transaction, the burden of proving the inherent or entire fairness of the Proposed Transaction, including all aspects of its negotiation, structure, price and terns, is placed upon Defendants as a matter of law.

## SUBSTANTIVE ALLEGATIONS

35.     On October 18, 2010, NSTAR announced that it signed a definitive agreement in connection with the Proposed Transaction, pursuant to which NSTAR shareholders will receive 1.312 Northeast Utilities common shares for each NSTAR share that they own (the "Merger Agreement").  The exchange ratio reflects a no premium merger based on the average closing share price of each company for the preceding 20 trading days.

36.     The companies called the merger "a merger of equals."  However, following completion of the merger, it is anticipated that Northeast Utilities shareholders would own approximately 56% and NSTAR shareholders would own approximately 44% of the combined company which will be a wholly-owned subsidiary of Northeast Utilities.

37.     The Proposed Transaction was unanimously approved by the Board and the Board of Trustee of Northeast Utilities.

38.     Completion of the transaction is expected to occur by early 2011.

39.     Commenting on the benefits of acquiring NSTAR, Charles W. Shivery, Chairman, President and CEO of Northeast Utilities, stated, in pertinent in part, as follows:

> ***NSTAR's strong cash flows are very complementary to Northeast Utilities' attractive regulated investment opportunities, mitigating the need for future equity issuances which is a significant benefit for our shareholders***. This merger, upon completion, will provide a significant increase in the dividend for Northeast Utilities shareholders and will enable long term dividend growth opportunities that are so important to all of our investors.

[Emphasis added.]

40.     While details concerning the background of the sale have yet to be disclosed to shareholders, the circumstances surrounding the events that gave rise to the Proposed Transaction are questionable.  Indeed, the value of NSTAR's stock is immensely greater than the consideration offered by Defendants in connection with the Proposed Transaction, particularly when considering the Company's present and future growth and profitability objectives.

41.     For example, on March 25, 2010, the Company announced that its Board of Trustees declared a quarterly dividend of $0.40 per common share.  The Company reported that the dividend was NSTAR's 484th consecutive dividend.  Additionally, on September 23, 2010, the Company announced that it declared a quarterly dividend of $0.40 per common share.  The Company reported that the dividend was NSTAR's 486th consecutive dividend, payable November 1, 2010 to shareholders of record as of October 8, 2010.

42.     Moreover, on June 1, 2010, NSTAR closed on the sale of its district energy operations business for $343.7 million to a joint venture comprised of Veolia Energy North America, a Boston-based subsidiary of Veolia Environment, and Morgan Stanley Infrastructure

Partners.  This sale was expected to result in a gain of approximately $109 million or $1.02 per share for NSTAR.

43.     Further, the Company's financial prospects are extremely promising.   For example, on April 29, 2010, NSTAR reported its first quarter financial results for the period ended March 31, 2010.  The Company reported earnings attributable to common shareholders of $59.7 million, or $0.56 per common share, compared to $61 million, or $0.57 per share reported for the same period in 2009.   The Company also reported earnings attributable to common shareholders for the twelve-month period ended March 31, 2010 of $2.35 per share compared to $2.24 per share for the same period in 2009.

44.     Commenting on the second quarter results, Defendant May stated, in pertinent part, as follows:

> We have begun 2010 on a positive note. ***Our earnings were solid despite mild weather conditions and we continue to see signs that the economic recovery in our region is beginning to take hold.*** We remain steadfast in our ongoing commitment to provide our customers with the high-quality service and reliability they deserve and have come to expect. Our service quality performance held up very well despite several storms in the first quarter.

[Emphasis added.]

45.     On July 22, 2010, the Company reported its second quarter financial results.  The Company reported earnings attributable to common shareholders of $171.0 million, or $1.61 per common share, compared to $56.9 million, or $0.53 per share reported for the same period in 2009.

46.     Commenting on the second quarter results, Defendant May stated, in pertinent part, as follows:

> We ended the first half of 2010 on a very positive note. Our sales of electricity were strong due to some hot weather conditions in a region where the economic recovery is beginning to take shape. ***Weather can put a strain on an electric system, but I am pleased that we were able to continue to provide our customers***

- 12 -

*with the high-quality service and reliability they deserve and expect.* We also completed the sale of our district energy operations in early June, and are now well underway with a $200 million share repurchase program.

[Emphasis added.]

47.     Thus, although NSTAR, akin to other companies in its industry, has been a victim of the tumultuous economy, the Company's operations and prospects are poised for growth. NSTAR's stock price has steadily risen throughout the year.

48.     The steady increase in the Company's stock price suggests that the market has increasing confidence in the Company's prospects and intrinsic value.   Clearly, the Proposed Transaction was timed to confer the benefits of these exceedingly positive financial and operational results to Northeast Utilities and deprive NSTAR shareholders of those benefits.

49.     Moreover, the terms of the Merger Agreement itself will dissuade or otherwise preclude the emergence of a superior transaction.   For example, the "no solicitation" provision, contained in Section 5.4 of the Merger Agreement, precludes the Company from: (i) soliciting, initiating or encouraging discussions concerning an Acquisition Proposal (defined as any offer or proposal involving the (a) purchase of assets or business constituting 20% of the Company's revenues, income or assets; (b) acquisition of 20% or more of any class of securities of the Company; or (c) merger, consolidation, tender offer or other business combination that would result in any person acquiring 20% or more of any class of equity securities); (ii) engaging or participating in any discussions or negotiations regarding, or provide or cause to be provided any non-public information relating to the Company; (iii) approving or recommending any Acquisition Proposal or entering into any letter of intent or other similar contract relating to any Acquisition Proposal.

50.     Additionally, if the Acquisition Proposal may reasonably result in an alternative "Superior Proposal" (a bona fide Acquisition Proposal in which such person attempts to acquire

50% or more of the Company's assets or equity securities) the Board, after consultation with a financial advisor and outside legal counsel, may change its recommendation concerning the Proposed Transaction ("NSTAR Adverse Recommendation Change"), but cannot make an NSTAR Adverse Recommendation Change until five business days after NSTAR provides written notice to Northeast Utilities ("Notice Period") advising Northeast Utilities that the Board received a Superior Proposal specifying the material terms of the Superior Proposal and identifying the person making such Superior Proposal.  NSTAR may not provide notice to Northeast Utilities that it is contemplating an NSTAR Adverse Recommendation Change until the fifth day of the Notice Period during which, at the request of Northeast Utilities, NSTAR had negotiated any changes or modifications to the Merger Agreement which would allow the NSTAR Board not to make such NSTAR Adverse Recommendation Change.

51.     The presence of the no solicitation provision, therefore, can only be designed to provide an even greater layer of protection for the Proposed Transaction and effectively dissuade the emergence of competing offers.

52.     Further, the Merger Agreement includes other preclusive corporate and deal protections to inhibit an alternate, and perhaps superior, transaction.  For example, the Board has obligated the Company to pay Northeast Utilities a $135 million termination fee and expenses up to $35 million if the Board, in certain circumstances, terminates the Merger Agreement or withdraws or modifies its recommendation of the Proposed Transaction.

53.     The Merger Agreement also provides that upon the completion of the merger, the Board of Trustees of Northeast Utilities will be made up of fourteen members consisting of: (a) seven designees of NSTAR which will include Defendant May; and (b) seven designees of Northeast Utilities.  Upon completion of the merger, Defendant May will become the CEO of the

combined company and Mr. Shivery will continue as non−executive Chairman of the combined company for eighteen months following the completion of the merger, at which time Defendant May will become Chairman of Northeast Utilities.

54.     As it stands, the Proposed Transaction does not adequately value NSTAR's shares.  Instead, as a direct result of the Board's abandonment of duty, the Proposed Transaction will benefit Northeast Utilities.  Accordingly, in the absence of injunctive relief, shareholders will not be able to make an informed decision about whether to vote in favor of the Proposed Transaction.

## COUNT I

### Claim for Breach of Fiduciary Duties
### (Against the Individual Defendants)

55.     Plaintiff repeats and realleges each allegation set forth herein.

56.     Defendants have knowingly or recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith and independence owed to the public shareholders of NSTAR and have acted to put the interests of Northeast Utilities ahead of the interests of NSTAR's shareholders.

57.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in NSTAR.

58.     As demonstrated by the allegations above, Defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of NSTAR because, among other reasons, they failed to:

       (a)     fully inform themselves of the market value of NSTAR before entering into the Agreement for the Proposed Transaction;

       (b)     act in the best interests of the public shareholders of NSTAR;

       (c)     maximize shareholder value;

       (d)     obtain the best financial and other terms when the Company's independent existence will be materially altered by the Proposed Transaction; and

       (e)     act in accordance with their fundamental duties of good faith, due care and loyalty.

59.    By reason of the foregoing acts, practices and course of conduct, Defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

60.    Unless enjoined by this Court, Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, which will exclude the Class from the maximized value they are entitled to, all to the irreparable harm of the Class.

61.    As a result of Defendants' unlawful actions, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive the real value of their equity ownership of the Company.

62.    Plaintiff and the members of the Class have an inadequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

63.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against the Individual Defendants.  Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

### COUNT II

**Aiding & Abetting the Individual Defendants'
Breach of Fiduciary Duty
(Against Defendant Northeast Utilities)**

64.     Plaintiff repeats and realleges each allegation set forth herein.

65.     Defendants NStar and Northeast Utilities are sued herein as aiders and abettors of the breaches of fiduciary duties outlined above by the Individual Defendants, as members of the Board of NSTAR.

66.     The Individual Defendants breached their fiduciary duties of good faith, loyalty, and due care to the NSTAR shareholders by failing to:

(a)     fully inform themselves of the market value of NSTAR before entering into the Agreement;

(b)     act in the best interests of the public shareholders of NSTAR common stock;

(c)     maximize shareholder value;

(d)     obtain the best financial and other terms when the Company's independent existence will be materially altered by the Proposed Transaction; and

(e)     act in accordance with their fundamental duties of good faith, due care and loyalty.

- 17 -

67.     Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendants NSTAR and Northeast Utilities, which, therefore, aided and abetted such breaches via entering into the Agreement.

68.     Defendants NSTAR and Northeast Utilities had knowledge that they were aiding and abetting the Individual Defendants' breach of their fiduciary duties to the NSTAR shareholders.

69.     Defendants NSTAR and Northeast Utilities rendered substantial assistance to the Individual Defendants in their breach of their fiduciary duties to the NSTAR shareholders.

70.     As a result of NSTAR and Northeast Utilities' conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

71.     As a result of the unlawful actions of defendants NSTAR and Northeast Utilities, Plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for NSTAR's assets and business and will be prevented from obtaining the real value of their equity ownership in the Company. Unless the actions of defendants NSTAR and Northeast Utilities are enjoined by the Court, they will continue to aid and abet the Individual Defendants' breach of their fiduciary duties owed to Plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

72.     Plaintiff and the other members of the Class have no adequate remedy at law.

73.     Plaintiff seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against defendants NSTAR and Northeast Utilities.   Plaintiff's counsel are

entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on the Class, and will seek an award of such fees and expenses at the appropriate time.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief in his favor and in favor of the Class, and against Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as Class representative and his counsel as Class counsel;

B.     Preliminarily and permanently enjoining the Individual Defendants, and anyone acting in concert with them, from proceeding with the sale of the Company unless and until they have acted in accordance with their fiduciary duties to maximize shareholder value;

C.     Requiring the Individual Defendants to properly exercise their fiduciary duties to Plaintiff and the Class by, among other things: (i) ascertaining the true transactional value of the Company; (ii) considering whether the Proposed Transaction or an alternate transaction maximizes shareholder value; and (iii) ensuring that no impediments unreasonably preclude alternative transactions that may maximize shareholder value;

D.     Rescinding, to the extent already implemented, the Proposed Transaction and any agreement or transaction attendant thereto or awarding the Class rescissory damages;

E.     Awarding Plaintiff the costs of this action, including a reasonable allowance for attorneys' and experts' fees and costs; and

F.     Granting such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on all claims and issues so triable.

- 19 -

Dated: October 19, 2010                    By its attorneys,

                                           **GILMAN AND PASTOR, LLP**


                                           /s/ David Pastor
                                           David Pastor (BBO #391000)
                                           63 Atlantic Avenue, 3rd Floor
                                           Boston, MA 02110
                                           Telephone:   (617) 742-9700
                                           Facsimile:   (617) 742-9701
                                           dpastor@gilmanpastor.com

                                           Joe Kendall
                                           Jamie McKey
                                           KENDALL LAW GROUP LLP
                                           3232 McKinney Avenue, Suite 700
                                           Dallas, Texas 75204
                                           Telephone: 214/744-3000
                                           214/744-3015 (fax)

                                           *Attorneys for Plaintiff*